# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

STEVEN J. HATFILL, M.D.,       :
       :
      Plaintiff,       :
       :      **Civil Action No. 03-1793 (RBW)**
v.       :
       :
ALBERTO GONZALES, et al.,[1]       :
       :
      Defendants.       :
       :

## MEMORANDUM OPINION

Currently before this Court is the Individual Defendants' Motion to Dismiss the Plaintiff's First Amended Complaint ("Defs.' Mot.") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim on which relief may be granted.[2]  Additionally, defendant Tracy Henke also moves to dismiss the claims against her pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure on the ground of insufficiency of service of process.  For the reasons set forth below, the defendants' motion will be granted.[3]

---

[1]Albert Gonzales is being substituted for John Ashcroft as the Attorney General of the United States pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, which states that "[w]hen a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office . . . the officer's successor is automatically substituted as a party."  However, because former Attorney General Ashcroft has been sued not only in his official capacity but also in his personal capacity, he remains a party to this action in the latter capacity.

[2]The Individual Defendants are John Ashcroft, Van Harp, Tracy Henke, Timothy Beres, and Darrell Darnell ("the individual defendants").  Memorandum of Points and Authorities in Support of the Individual Defendants' Motion to Dismiss the Plaintiff's First Amended Complaint ("Defs.' Mem.") at 3.  Former Attorney General Ashcroft resigned his office in 2004 and defendant Harp retired from the Federal Bureau of Investigation ("FBI") in 2003.  Id. at 13 n. 5.  Defendants Beres and Darnell no longer work for the Department of Justice ("DOJ") and now work in the Department of Homeland Security.  Id.  Although the amended complaint states that defendant Henke occupies a position in the office of the Associate Attorney General, she was recently appointed as the Executive Director for grants and training in the Preparedness Directorate at the Department of Homeland Security.  Id.

[3]Because the Court concludes that the claims against the individual defendants in their personal capacities cannot survive their Rule 12(b)(6) challenges, the Court need not address their other challenges.

# I. __Factual Background__

The background facts that form the basis for this case are set forth in detail in this Court's prior Memorandum Opinion that resolved the Individual Defendants' Motion to Dismiss the initial complaint, and will only be repeated here to the extent necessary to resolve the pending motion. __See__ Hatfill v. Ashcroft, 404 F. Supp. 2d 104, 106-109 (D.D.C. 2005).

This action was filed by Dr. Steven J. Hatfill ("Dr. Hatfill") against the United States Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI") and several named and unnamed federal officials.  Dr. Hatfill's initial four count complaint alleged violations of the First and Fifth Amendments of the United States Constitution, the Privacy Act, 5 U.S.C. § 552a, __et. seq.__, (1999) and a DOJ regulation, 28 C.F.R. § 50.2.  The individual defendants, former Attorney General John Ashcroft, Van A. Harp, Timothy Beres and Daryl Darnell earlier moved to dismiss Counts I, II, and IV of the complaint on the ground that Dr. Hatfill had failed to state claims against them upon which relief could be granted.  This Court issued a Memorandum Opinion and Order on September 16, 2005, granting in part and denying in part the individual defendants' motion to dismiss.  __See__ Hatfill, 404 F. Supp. 2d at 121.  Specifically, the Court granted in part the individual defendants' motion with respect to Counts I, and granted the motion entirely with respect to Counts II and IV.  The consequence of the Court's ruling as to Count I was that having adequately pled a Fifth Amendment violation against the individual defendants, the plaintiff's demand for declaratory and injunctive relief survived their motion to dismiss but that his Bivens[4] component of this claim was dismissed because those allegations had to be pursued under the Privacy Act, 5 U.S.C. § 552. __Id.__ at 116.  Dr. Hatfill has now filed his

---

[4]Biven v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

First Amended Complaint, again alleging in Counts I and II identical violations of his Fifth and First Amendment rights of the United States Constitution against the individual defendants in both their personal and official capacities.  Amended Complaint ("Amd. Compl.") at 55-57.[5]  Dr. Hatfill has also added Tracy Henke to Count I and II as a defendant in both her personal and official capacities.  Amd. Compl. at 5.  And, in Count III of the First Amended Complaint Dr. Hatfill alleges violations of the Privacy Act by both the DOJ and the FBI.  Id. at 57-58.  Although this Court in its prior opinion dismissed the components Dr. Hatfill's two claims brought against the individual defendants for the alleged violations of his Fifth and First Amendment rights pursuant to Bivens, he has nonetheless included those components of the claims again in his First Amended Complaint "for the purpose of preserving the claims for appeal if any of his damages remain uncompensated after the trial of this matter."  Amd. Compl. at 56-57.

## II.  Standard of Review

As noted above, all of the individual defendants have moved to dismiss Dr. Hatfill's First Amended Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defs.' Mot. at 1, and defendant Henke has also moved for dismissal pursuant to Rule 12(b)(5).  Id.  The Bivens component of the claims alleging violations of Dr. Hatfill's First and Fifth Amendment rights that ware previously dismissed are again dismissed for the same reasons stated in the Court's September 16, 2005, Memorandum Opinion.  See Hatfill, 404 F. Supp. 2d at 116-117, 119.  And the same result befalls the Bivens component of these claims

---

[5]References to "Amd. Compl." are to the First Amended Complaint filed on November 18, 2005.

asserted against defendant <u>Henke</u>.[6]  Thus, the remainder of this opinion will focus on the sustainability of Dr. Hatfill's claims for declaratory and injunctive relief sought against the individual defendants in their personal capacities.

**Rule 12(b)(6)**

To survive a motion to dismiss, made pursuant to Rule 12(b)(6), a complaint need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (citing Fed. R. Civ. P. 8(a)).  And, when reviewing such a motion, the court must accept as true all the factual allegations contained in the complaint.  <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164 (1993).  A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which he is entitled to relief.  <u>Woodruff v. DiMario</u>, 197 F.R.D. 191, 193 (D.D.C. 2000).  Thus, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.

## III.  Analysis

The individual defendants move to dismiss Hatfill's First Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim on which relief may be granted "to the extent that the plaintiff seeks relief from them in their individual capacities." Defs.' Mot. at 1.

---

[6]With respect to Dr. Hatfill's claim against defendant Tracy Henke in her individual or personal capacity, the Court need not address the defendants arguments with respect to her statute of limitations and insufficient service of process defenses because, for the reasons stated in this opinion, Dr. Hatfill has not stated a viable claim against the individual defendants in their personal capacities.  And, like the other individual defendants, Henke is not seeking dismissal of the complaint against her in her official capacity.  <u>See</u> Individual Defendants' Reply Memorandum in Support of Motion to Dismiss the Plaintiff's First Amended Complaint at 2 n. 1.

They contend that "[a]s a matter of law, equitable relief for violations of federal rights is not available from government officials, current or former, in their individual capacit[ies]." Memorandum of Points and Authorities in Support of the Individual Defendants' Motion to Dismiss the Plaintiff's First Amended Complaint ("Defs.' Mem.") at 3.  The individual defendants opine that the real party in interest is the government and contend that "Dr Hatfill's attempt to sue the individual defendants in their individual capacity for equitable relief fails as a matter of law because Dr. Hatfill seeks relief from improper parties."  Id. at 5.

The defendants rely on Cmty. Mental Health Servs. of Belmont v. Mental Health and Recovery Bd. Serving Belmont, Harrison & Monroe Counties, No. 04-3587, 2005 WL 2233603, slip op. at 11 (6th Cir. Sept. 14, 2005); Ameritech Corp. v. McCann, 297 F.3d 582, 587 (7th Cir. 2002); Frank v. Relin, 1 F.3d 1317, 1327 (2nd Cir. 1993); Feit v. Ward, 886 F.2d 848, 858 (7th Cir. 1989); and Del Raine v. Carlson, 826 F.2d 698, 703 (7th Cir. 1987), as support for their motion.  Defs.' Mem. at 6.  They contend that these cases "recognize that the government is the real party in interest in a suit for non-monetary relief and that a government employee's personal interest in the litigation does not extend beyond whether he is required to pay damages out of his own pocket."  Defs.' Mem. at 6.  Moreover, they posit "[a]n injunction or declaratory judgment may affect how [an individual] performs his official duties in the future, but a public servant has no legally cognizable personal interest in performing official duties in one fashion versus another."  Id.  Although the District of Columbia Circuit has not directly addressed the issue, other Circuits have concluded that there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity.

For example, in Feit v. Ward, the plaintiff brought suit against his two supervisors in their

individual capacities alleging that his termination of employment for participating in an anti-spearfishing rally violated his First Amendment rights.  Feit, 886 F.2d at 850.  The plaintiff sought declaratory and injunctive relief, and also filed a Bivens claim for monetary damages.  Id.  Specifically he sought equitable relief in the form of a judgment declaring the defendants' policy prohibiting Forest Service employees form participating in spearfishing protests as violative of the First Amendment, as well as a permanent injunction prohibiting the defendants "from disciplining or discharging employees for exercising their First Amendment rights."  Id.  Although the court concluded that the plaintiff's claims for declaratory and injunctive relief were mooted by the termination of his employment, which precluded him from having standing, the court noted:

> Even if [the plaintiff] had standing to seek equitable relief in federal court, the district court's dismissal of [his] claims for declaratory and injunctive relief was proper because [the plaintiff], in challenging the alleged Forest Service policy prohibiting employees from participating in anti-spearfishing activities, sued the improper defendants.  In his complaint [the plaintiff] seeks relief from the defendants in their individual capacities only.  The policy [the plaintiff] challenges, however, is that of the Forest Service and is carried out by the defendants in their capacities as supervisory Forest Service employees, i.e., in their official capacities. Moreover, the equitable relief [the plaintiff] requests – a declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future – can be obtained only from the defendants in their official capacities, not as private individuals.

Id. at 858 (citing Del Raine, 826 F.2d at 703).

Similarly, in Ameritech, the court stated that "vindicating federal rights and holding state officials responsible to federal law – cannot be achieved by a lawsuit against a state official in his or her individual capacity." 297 F.3d at 586.  In Ameritech, the plaintiffs sued the District Attorney of Milwaukee County, Wisconsin in his official capacity, seeking a declaration that the District Attorney comply with the Electronic Communications Privacy Act by paying for services

provided by Ameritech, which produced automated message accounting studies ("AMAs") that were occasionally obtained by the District Attorney pursuant to court orders he requested.  Id. at 584.  The District Attorney had refused Ameritech's request for the costs associated with compiling the AMAs, maintaining that Ameritech was not entitled to reimbursement and also argued that Ameritech's suit was barred by the Eleventh Amendment.  Id.[7]  The district court agreed that the Eleventh Amendment barred Ameritech's suit and granted the District Attorney's motion to dismiss.  Id. at 585.  The Seventh Circuit reversed, concluding that "[t]he Eleventh Amendment did not bar Ameritech's lawsuit [because it sought] prospective injunctive relief for an ongoing violation of federal law."  Id. at 589.  In reaching this conclusion, the court discussed the doctrine pronounced in Ex Parte Young, 209 U.S. 123 (1908).  Ex Parte Young involved a suit filed against state officials seeking to enjoin enforcement of a railroad commission's order requiring, inter alia, a reduction in rates.  Ameritech, 297 F.3d at 586 (citing Ex Parte Young, 209 U.S. at 129).  Under the Ex Parte Young doctrine, "a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law."  Ameritech, at 586 (quoting Dean Foods Co. v. Brancel, 187 F.3d 609, 613 (7th Cir. 1999)).  The Supreme Court held that "when a state official violates the Constitution or federal law, he acts outside the scope of his authority and is no longer entitled to the State's immunity from suit.  Id. (citing Ex Parte Young, 209 U.S. at 155-156).  "Young thus creates a legal fiction – the 'state official who

---

[7]The Court recognizes that some of the cases analyzed in this opinion supporting the position that equitable relief is only available if the lawsuit is directed to the individual defendants in their official capacities involved state officials who were sued in their official capacities, thereby implicating immunity protections of the Eleventh Amendment.  However, in this case, the Eleventh Amendment is not implicated because the individual defendants are federal officials.  What has been extracted from these cases is the analogous maxim that federal officials, like state officials, cannot be sued for equitable relief in their individual capacities because the relief sought by a plaintiff can only be provided by the individual defendants in their official capacities.

acts in violation of the federal Constitution is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." _Ameritech_, 297 F.3d at 586 (quoting _MSA Realty Corp. v. Illinois_, 990 F.2d 288, 291 (7th Cir. 1993)) (citing _Ex Parte Young_, 209 U.S. at 159-60).  Thus, under _Ex Parte Young_, "state officials may be sued in their official capacities for injunctive relief, although they may not be sued for money damages." _Ameritech_, 297 F.3d at 586 (citations omitted).  The _Ameritech_ court accordingly rejected the district court's holding "that as a technical matter, the [_Young_] exception [did] not apply because [the District Attorney] was named in his official capacity and not in his _individual_ capacity."' _Id._ (emphasis in original) (citation omitted).  Rather, the Seventh Circuit noted that "[i]n fact the opposite is true – a case may proceed under the _Young_ exception only when a state official is sued in his official capacity." _Id._ (citing _Young_, 209 U.S. at 155-56) (citation omitted).  The _Ameritech_ court went on to state:

> The twin goals served by the _Young_ exception to Eleventh Amendment immunity – vindicating federal rights and holding state officials responsible to federal law – cannot be achieved by a lawsuit against a state official in his or her individual capacity.  The reason is that individual (or personal) capacity suits do not seek to conform the State's conduct to federal law; rather, such suits seek recovery from the defendant personally.

_Ameritech_, 297 F.3d at 586 (citation omitted); _see also_ _Del Raine_, 826 F.2d at 703 (where the court noted that because the plaintiff sought, _inter alia_, injunctive relief in the form of release from prison segregation and expungement of the order placing him in segregation, only an employee in his official and not in his private capacity could provide the relief sought, despite the fact that the parties had been treating the suit as one against a public official in his personal capacity).

Despite what has been discussed above, Dr. Hatfill, relying on <u>Hafer v. Melo</u>, 502 U.S. 21 (1991); <u>Larson v. Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682 (1949); and <u>Ex parte Young</u>, 209 U.S. 123 argues that this Court has authority to order injunctive and declaratory relief against federal officials in their personal capacities.  Plaintiff's Opposition to Individual Defendants' Motion to Dismiss the Plaintiff's First Amended Complaint ("Pl.'s Opp'n") at 3. He contends that "[w]hether an action for non-monetary relief can be maintained against a federal official in his or her individual capacity depends entirely on the facts of each case.  <u>Id.</u> at 4.  The Court concludes, however,  that Dr. Hatfill's reliance on the cases just referenced is somewhat misplaced.

In <u>Ex Parte Young</u>, a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute, which according to the petitioners, violated their constitutional rights.  209 U.S. at 131-132.  The Attorney General argued that the action was really not against him but rather against the State and was therefore barred by the Eleventh Amendment.  <u>Id.</u> at 132.  In rejecting the Attorney General's position, the Supreme Court concluded that an unconstitutional statutory enactment is void and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States."  <u>Id.</u> at 160.  Because the State could not authorize the unconstitutional action, the Court further concluded that the Attorney General was "stripped of his official or representative character and [was] subjected in his person to the consequences of his individual conduct."  <u>Id.</u> However, "[w]hile the rule permitting suits alleging conduct contrary to 'the supreme authority of the United States' has survived, the theory of <u>Young</u> has not been provided an expansive interpretation."  <u>Penhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 103 (1984).  In other

words, "the authority-stripping theory of <u>Young</u> is a legal fiction that has been narrowly construed." <u>Id.</u> at 114 n. 25.  <u>Young</u> serves only "to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'"  <u>Id.</u> at 105.  Thus, the "ultra vires" or authority stripping theory enunciated in <u>Young</u> – whereby a government official who acts unconstitutionally is stripped of his official or representative character – being nothing more than a "legal fiction," does not support maintaining a legal action against government officers in their individual capacity where equitable relief is sought, as Dr. Hatfill suggests.  Rather, "state officials may be sued in their official capacities for injunctive relief, although they may not be sued for money damages." <u>Ameritech</u>, 297 F.3d at 586 (citation omitted).  Moreover, what has come to be called the "ultra vires" or "authority striping" rule, by which a government official who acts unconstitutionally is "stripped of his official or representative character" and can be sued despite the proscription of Eleventh Amendment, <u>Young</u>, 209 U.S. at 160, "created the 'well-recognized irony' that an official's unconstitutional conduct constitutes state action under the Fourteenth Amendment but not the Eleventh Amendment." <u>Penhurst</u>, 465 U.S. at 105.

Hatfill also relies on <u>Larson</u> as "restat[ing] the same essential distinction [of Young]" involving injunctive relief against a federal officer." Pl.'s Opp'n at 5.  In <u>Larson</u>, the plaintiff – the Domestic & Foreign Commerce Corporation – alleged that the Administrator of the War Assets Administration had sold it surplus coal and refused to deliver it to the plaintiff, instead entering into a new contract to sell it to others.  <u>Larson</u>, 337 U.S. at 684.  The plaintiff sought an injunction prohibiting the Administrator from selling and delivering the coal to any one other than the plaintiff, and also a declaration that the sale of the coal to the plaintiff was valid and the

sale to the second purchaser invalid.  Id.  Notably, the complaint was directed against [the

Administrator] because of his official function as chief of the War Assets Administration . . . and

"his agents, assistants, deputies and employees . . . ."  Id. at 686.  Although the Court determined

that the relief sought in Larson was indeed relief against the sovereign, id. at 689, it admittedly

acknowledged that "[t]here may be, of course suits for specific relief against officers of the

sovereign which are not suits against the sovereign."  Id.  As examples, the Court said that "[i]f

the officer purports to act as an individual and not as an official, a suit directed against that action

is not a suit against the sovereign."  Id.  Similarly, "where the officer's powers are limited by

statute, his action beyond those limitations are considered individual and not sovereign actions."

Id.  In such situations, "[t]he officer is not doing the business which the sovereign has

empowered him to do or he is doing it in a way which the sovereign has forbidden . . . and [he]

therefore may be made the object of specific relief."  Id.  "It is important to note that in such

cases the relief can be granted without impleading the sovereign, only because of the officer's

lack of delegated power."  Id. at 689-90.  Thus, Larson does lend support to Hatfill's proposition

that this Court has authority to order injunctive and declaratory relief against federal officials in

their personal capacities in cases where "[t]he officer is not doing the business which the

sovereign has empowered him to do or he is doing it in a way which the sovereign has

forbidden."  Id.

        In Hafer, terminated state employees brought an action against the newly-elected auditor

general seeking monetary damages and reinstatement pursuant to 42 U.S.C. § 1983, alleging that

they were discharged on the basis of their political affiliation in violation of the Constitution.

Hafer, 502 U.S. at 23.  Although the plaintiff sued for both monetary and injunctive relief, the

injunctive relief was sought against the defendant in her official capacity.  Id. at 24.  The issue of whether individual defendants could be sued in their personal capacity for injunctive relief was therefore not directly addressed in Hafer because the court focused on whether "a suit for [money] damages . . . could be brought against Hafer in her personal capacity."  Id. at 24. Specifically, the question presented was "[w]hether state officers may be held personally liable for damages under § 1983 based upon action taken in their official capacities."  Id.  The Supreme Court did not disturb the Circuit Court's assessment of and decision to rely on its previous statement in Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) that "state officials sued for injunctive relief in their official capacities are 'persons' subject to liability under § 1983. Hafer, 502 U.S. at 24. (citing Will, 491 U.S. at 71 n. 10).  Thus,  Hafer does not support Hatfill's argument, but rather affirms that the proper vehicle for seeking equitable relief against a government official is an official capacity suit.  Id.

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."  Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974)).  "Official capacity suits, [in contrast,] 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  Hafer, 502 U.S. at 25 (quoting Graham, 473 U.S. at 165) (citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 n. 55 (1978)).  "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'"  Hafer, 502 U.S. at 25 (citations omitted).  Even though an officer is named as a defendant, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit

against the official's office."  Will, 491 U.S. at 71.

> "As a practical matter, a public official who is a defendant in a suit seeking an
> injunction is not 'on trial' at all.  The suit seeks relief against him in his official
> capacity; he need not attend the trial, which will be conducted by attorneys
> representing the governmental body.  If he leaves office during the interim, he
> leaves the case behind and his successor becomes the party."

Scott v. Lacy, 811 F.2d 1153, 1153-1154 (7th Cir. 1987); see also Graham, 473 U.S. at 165  n. 11

("In [a]n official-capacity action in federal court, death or replacement of the named official will

result in automatic substitution of the official's successor in office.") (citations omitted); Hafer,

502 U.S. at 25 ("Indeed, when officials sued in this capacity in federal court die or leave office,

their successors automatically assume their roles in the litigation.")  "Regardless of the manner

by which a plaintiff designates the action, a suit should be regarded as an official-capacity suit . .

. when [the] 'judgment sought would expend itself on the public treasury or domain, or interfere

with the public administration, or if the effect of the judgment would be to restrain the

Government from acting, or to compel it to act.'"  Howe v. Bank for Intern. Settlements, 194 F.

Supp. 2d 6, 19 (D. Mass. 2002) (quoting Dugan v Rank, 372 U.S. 609, 620 (1963)) (internal

citations omitted).

Here, Dr. Hatfill states that Count I of his First Amended Complaint alleges that the

individual defendants violated his First Amendment rights by "publicly stigmatizing him through

a campaign of leaks and faux surveillance, and by instructing Louisiana State University to

remove him from all federally funded programs, without any notice or any opportunity to be heard

and without any avenue for appealing the decision."  Pl.'s Opp'n at 9 (citations omitted).  He also

alleges in Count I that leaks . . . that [his] apartment was being searched pursuant to a warrant

-13-

rather than by consent, were directly related to [his] termination from his $150,000-per-year job at LSU, and that they deprived him of the liberty to work in his chosen field." Id. (citations omitted). Dr. Hatfill concludes that "[t]hese allegations adequately plead a deprivation of Dr. Hatfill's 'liberty' interests under the Fifth Amendment. Id. Consequently, Dr. Hatfill requests that this court issue a declaration that the individual defendants violated his constitutional rights under the Fifth Amendment and a permanent injunction prohibiting the individual defendants from disclosing facts about him that they learned from their government employment, as well as prohibiting them from interfering with Dr. Hatfill's efforts to obtain employment. Amd. Compl. at 64-65. Additionally, Dr. Hatfill requests that this court enter a permanent injunction prohibiting the individual defendants from "substantially repeating" the same conduct in which they engaged in as described in the First Amended Complaint. Id. at 65. With respect to defendants Ashcroft and Harp, Dr. Hatfill argues that "a permanent injunction is necessary because the facts show that both men, though retired remain in a position to harm [him] with further public statements of the type they have already made." Pl.'s Opp'n at 10. Moreover, with respect to defendants Darnell, Beres, and Henke, Dr. Hatfill contends that a "permanent injunction is necessary because the facts show that all three defendants remain in a position to harm [him] by interfering with any biodefense work he may be doing pursuant to other federally funded contracts." Id. at 11.[8]

As discussed in this Court's previous Memorandum Opinion, Dr. Hatfill has stated a viable claim with respect to his government stigma or other disability theory, which is applicable

---

[8]Dr. Hatfill also requests declaratory and injunctive relief against the DOJ, the FBI, and now Attorney General Gonzales in his official capacity. Def.'s Opp'n at 10.

when "adverse employment action and a stigma or other disability . . . [have] foreclosed [a] plaintiff's freedom to take advantage of other employment opportunities." O'Donnell v. Barry, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972)).  "The basis of such a claim is not [only] the defamatory nature of the official speech, but 'the combination of an adverse employment action and a stigma or other disability that foreclose[s] [the plaintiff's] freedom to take advantage of other employment opportunities.'" Holman v. Williams, 436 F. Supp. 2d 68, 79 (D.D.C. 2006) (citing O'Donnell, 148 F.3d at 1140). The District of Columbia Circuit has explained that such a claim

> requires that the government either have formally deprived one of a legal right . . . or have so severely impaired one's ability to take advantage of a legal right, such as a right to be considered for government contracts or employment or a right to seek non-government employment, that the government can be said to have "foreclosed" one's ability to take advantage of it and thus extinguished the right.

Holman, 436 F. Supp. 2d at 79 (emphasis added) (quoting Mosrie v. Barry, 718 F.2d 1151, 1161 (D.C. Cir. 1983)).  "The due process claim is implicated by such action because the Constitution protects an individual's right to follow a chosen profession without governmental interference." Id. at 80 (quoting Kartseva v. Dep't of State, 37 F.3d 1424, 1529 (D.C. Cir. 1995) (internal quotations omitted)) (emphasis added).  Thus, the fact that the misrepresentations were made by the individual defendants in their official capacities is an "integral part of [Hatfill's] constitutional claim . . . [because] [f]or defamatory statements to be actionable under the Constitution, 'the government must be the source of the defamatory allegations." Sudnick v. Dep't of Def., No. 06-0654 (ESH), 2007 WL 419619 at * 8 (D.D.C. Feb. 8, 2007) (quoting Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1108 (D.C. Cir. 1985); see also Mosrie, 718 F.2d at 1161 (concluding that liberty interest is deprived if government imposed stigma "so severely impaired one's ability to take

advantage of a legal right, such as a right to be considered for government contracts or employment or a right to seek non-government employment, that the government can be said to have 'foreclosed' one's ability to take advantage of it and thus extinguished the right") (footnote omitted); Conset Corp. v. Comm. Servs. Adm., 655 F.2d 1291, 1297 (D.C. Cir. 1981) (finding liberty interest is deprived if "memorandum was effectively used to bar Conset from government contract work due to charges calling into question Conset's integrity, honesty or business reputation").  Accordingly, the relief sought by Dr. Hatfill can only be provided by the individual defendants in their official capacities – not the individual defendants in their personal capacities because the government is the only party that can violate his constitutional rights with respect to his government stigma or disability theory which is applicable "when adverse employment action and a stigma or disability . . . [have] foreclosed [a plaintiff's] freedom to take advantage of other employment opportunities."  O'Donnell, 148 F.3d at 1140.[9]

"[C]ourts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringement of federal rights." Rhode Island Dept. of Envtl. Mgmt. v. United States, 304 F.3d 31, 41 (1st Cir. 2002) (citations omitted); Feit, 886 F.2d at 858 (finding that a declaration that the challenged policy was

---

[9]Dr. Hatfill argues that an injunction addressed to the individual defendants in their official capacities would "not, for example, prohibit defendant Harp from telling a reporter that based on what he saw when he was in charge of the anthrax investigation, [he] should be considered the prime suspect."  Pl.'s Opp'n at 10.  Dr. Hatfill speculates that the reporters who have contacted defendant Harp since his retirement have attempted to learn the official views of the government by seeking to acquire information from him because he is familiar with the investigation even though he is now retired.  Id.  Dr. Hatfill projects that "[a]ny disparaging statement that either Ashcroft or Harp made about [him] would undoubtedly be published along with a prominent reference to their roles in the investigation." Id. at 11.  Similarly, with respect to defendants Darnell, Beres, and Henke, Dr. Hatfill posits that a "permanent injunction is necessary because the facts show that all three defendants remain in a position to harm Dr. Hatfill by interfering with any biodefense work he may be doing pursuant to federally funded contracts."  Id.  As already discussed in greater detail in this opinion, Dr. Hatfill's Fifth Amendment claim against the individual defendants can only be redressed by the government.  Accordingly, any post-retirement disclosures by defendants Harp and Ashcroft would not be government stigmatization actionable under the Fifth Amendment.

unconstitutional and an injunction barring the defendants from implementing the policy in the future can be obtained only from the defendants in their official capacities and not as private individuals).  Therefore, only by acting as a government official (not as an individual acting personally), can a public official's compliance with a court decree remedy the governmental action, policy or practice that is being challenged.  Indeed, to reiterate what the Seventh Circuit noted in Ameritech, "[t]he twin goals served by the Young exception to the Eleventh Amendment immunity – vindicating federal rights and holding state officials responsible to federal law – cannot be achieved by a lawsuit against a state official in his or her individual capacity [because] individual [or personal] capacity suits do not seek to conform the State's conduct to federal law; rather, such suits seek recovery from the defendant personally."  Ameritech, 297 F.3d at 586.  And, as the District of Columbia Circuit has consistently held, a government stigmatization claim requires that "the government must be the source of the defamatory allegations" that brought about an adverse employment action, such as a right to be considered for government contracts or employment or a right to seek non-government employment.  Holman, 436 F. Supp. 2d at 79; Doe, 753 F.2d at 1109; see also Mosrie, 718 F.2d at 1161.

Despite Dr. Hatfill's attempt to obtain injunctive relief from the individual defendants for the deprivation of his liberty interests protected by the Fifth Amendment, he simply cannot seek that redress from the individual defendants in their personal capacities.  Rather, the relief Dr. Hatfill seeks can only be provided by the government through government employees acting in their official capacities because deprivation of a constitutional right can only be remedied by the government.  Doe, 753 F.2d at 1109; Mosrie, 718 F.2d at 1161.  Accordingly, for the reasons discussed above, Dr. Hatfill has failed to state a claim against the individual defendants in their

personal capacities for which relief can be granted and the equitable claims against them in their personal capacities must be dismissed.

### IV. Conclusion

In conclusion, Dr. Hatfill has failed to state a claim against the individual defendants in their individual capacities upon which relief can be granted.  The relief sought for the alleged infringement of Dr. Hatfill's Fifth Amendment rights can only be obtained from government officers in their official capacities.  Accordingly, the claims against the individual defendants's in their individual or personal capacities must be dismissed.[10]

SO ORDERED this 16th day of March, 2007.

REGGIE B. WALTON
United States District Judge

---

[10]A Order consistent with this Memorandum Opinion will be filed contemporaneously herewith.